BERLAGE *v.* BOYD, SUBSTITUTED TRUSTEE

[No. 109, October Term, 1954.]

522

*Decided March 23, 1955.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Earl J. Lombard* for the appellant.

*R. Edwin Brown* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal by "T. N. Berlage, *pro se*," is from an order of the Circuit Court for Montgomery County, in Equity, passed on September 10, 1954, ratifying an auditor's account filed May 11, 1954. The complicated nature of the case requires a rather tedious recital of what is disclosed by the transcript.

The appellant is the life-tenant under the will of his wife, Helen Page Berlage, who died on June 16, 1947. After bequeathing her household goods and personal effects to her four children, she devised and bequeathed the residue of her estate in trust to pay the net income to her husband during his life "and in addition thereto, such portion and portions of the principal thereof as my Trustee under this will may deem reasonably required for the support of my beloved husband, Thomas N. Berlage, and his household." Upon his death, she directed the trustee to divide the then principal of the trust into equal shares for her children then living, with stirpital representation, and pay over one share as each son became 25 and each daughter 30 years of age, with provisions for the payment of income in the meantime. With reference to the farm property known as "Sher-

borne Meadows" she declared: "it is my wish that my Trustee retain it for the use of my beloved husband and his household so long as he lives and desires its use, and afterwards to give first preference in any lease or sale of the said property to any of my children who might desire to lease or buy it. I expressly provide that this paragraph shall not be construed to restrict the leasing or sale of such property, but merely to indicate my wish that my Trustee make the enjoyment of this property available for my husband and such of my children as may desire it so long as consistent with the prudent administration of my estate for the benefit of my beloved husband and all my children."

Thomas N. Berlage was named as executor, and administered the estate, filing a first and final account that was ratified by the Orphans' Court February 11, 1949. The account showed that claims against the estate exceeded the value of personalty by $9,335.43, which had been brought into balance by loans secured by the executor. The 200-acre dairy farm "Sherborne Meadows" was appraised at $39,800, subject to an outstanding mortgage of $18,200. Less the loans secured by the executor, the net clear value of the real estate was shown to be $12,264.57.

The brother of the testatrix, Charles A. Page of Washington, D. C., had been named in the will as trustee but declined to serve. T. N. Berlage, Jr., the oldest son, who was named in the will as alternate trustee, also declined to serve, and upon petition of T. N. Berlage, T. N. Berlage, Jr., and Patricia Berlage, filed on February 11, 1949, the court appointed Raymond B. Roberts, a farmer and friend of the family, as trustee to administer the trust estate under the supervision of the court, under $5,000 bond. The two minor children, Beverly and Bruce, who were then 15 and 14 years of age, respectively, were represented by guardian *ad litem* who approved the appointment. The petition recited that it was necessary to refinance the property to repay loans and secure working capital to operate the dairy farm.

Upon petition by the new trustee, a loan of $5,500, secured by chattel mortgage, was approved in April, 1949, to pay off a loan obtained by the executor. On June 23, 1949, a loan of $7,500, to complete the erection of a house and other farm buildings, curtail the first mortgage and provide working capital, was approved, to be secured by the uncompleted buildings and seven acres of land.

On July 22, 1949, the trustee reported to the court, accounting for the proceeds of the $5,500 loan and showing a cash balance of $699.70, but not referring to the $7,500 loan. He gave no list of assets and liabilities, and stated that he had not received from the executor, T. N. Berlage, "any funds or credits accruing to the said estate between the date of his appointment as Trustee, to wit, February 11, 1949 and June 15, 1949, upon which latter date this Trustee succeeded in acquiring financial control of the management and operation of the corpus of said trust." He stated that Berlage had furnished him a statement showing a balance of $20.81 in the Hanover Bank, as of June 15, 1949, and that the statement revealed that Berlage had incurred indebtedness in conection with a new house being constructed on the trust property in the amount of $425, for which a mechanic's lien had been filed, and a further indebtedness to the lien-holder of $323. It does not appear that any action was taken on this report.

On May 2, 1950, the trustee filed a petition to be relieved of his duties "due to the acrimonious relations now existing between your petitioner and the life tenant and beneficiaries", and to be relieved of certain personal obligations he had assumed in connection with the purchase of farm equipment. With this petition was filed a report on "operation of estate" for the period from July 15, 1949, through December 31, 1949, accounting for the proceeds of the two loans and the sale of milk and calves, showing a balance on hand after disbursements of $501.86. It was stated that "an item of $700 should also be included, but this was turned over to the previous Executor at his request to enable him to

straighten out Estate affairs. Previous. Executor reports the remainder, the sum of $20.81 on deposit at Hanover." It was also stated that "a complete balance sheet and operating statement for the Estate is not possible without an extensive audit." Appended to the report was a copy of a report dated August 1, 1949, by August L. Lahr, a Certified Public Accountant of Washington, D. C., for the period from February 1, 1949, to June 15, 1949, stated to have been made at the request of T. N. Berlage, T. N. Berlage, Jr., and Patricia Berlage. Lahr stated that he had examined the cancelled checks and bank statements in two accounts in the Hanover Bank, and copy of a report that Berlage claimed to have submitted to Roberts, showing accounts receivable and accounts payable as of February 1, 1949, and June 15, 1949, with receipts and disbursements during the intervening period; that the $700 item mentioned in the trustee's report had been deposited in the Hanover bank and disbursements therefrom accounted for. Lahr's report showed a cash balance of $699.70, plus $20.81, as of June 15, 1949. It also attempted to explain the indebtedness incurred by Berlage for improvements to the small house, as necessary to accommodate him and his family when they moved there from the large house, which was then occupied by a dairy manager.

On the same day that these papers were filed, Berlage filed a petition asking the appointment of a new trustee and nominating Dr. James Boyd, and the court passed an order releasing Roberts from the further execution of the trust and appointing Boyd, under $5,000 bond, and directing that upon qualification of the new trustee, Roberts "shall make a proper accounting" to the new trustee "of all moneys in his hands, records, books of account and documents pertaining to said trust." On July 7, 1950, Boyd petitioned the court for authority to obtain a loan of $8,200 to pay off certain chattel mortgages on machinery and cows, and to pay sums advanced by Roberts and Patricia Berlage. An order approving was signed on the same day. But on October 31, 1950,

there was another petition and order authorizing the sale of certain Jersey cows under the auspices of the Maryland Jersey Cattle Club, and presumably this was done. On March 9, 1951, Boyd filed a petition stating that it was "impractical to continue to operate the farm" and sought authority to sell the livestock and machinery at public sale, and to lease the premises to Sylvan A. Priebe and wife for three years at $3,300 per annum. On the same day an order was signed to that effect. The lease reserved about eight acres, with the improvements thereon, where Berlage and some of his children resided. The livestock and machinery were subsequently sold at public auction.

On September 8, 1953, Boyd petitioned the court to be discharged as trustee, reciting that he had removed his residence and employment to New York. He filed with the petition an account of his receipts and disbursements, covering the period from May 1, 1950 to date, showing a cash balance on hand of $1,079.45. A note indicated that he was holding the sum of $420.15 claimed by Berlage from sale of certain furniture, against a claim of $828.50 against Berlage for loss due to the estate on a purchase made by him at the public auction on which he defaulted. A receipt is shown in July, 1950, of $4,500 from C. B. Wertheim without explanation. He also filed a petition praying that the account be referred to the court auditor, and an appropriate order was signed. On December 11, 1953, Boyd joined in a petition signed by Berlage, T. N. Berlage, Jr., Beverly A. Berlage and Bruce Berlage, the last named being still minors, praying that T. N. Berlage, Jr., originially named as an alternate in the will, be appointed substitute trustee and the estate removed from court supervision. Patricia Berlage (Landsdale) did not join in the petition. No action was taken on this petition.

On May 11, 1954, the Court Auditor filed his report. He begins by stating that the report shows only the accounting disclosed by the trustee's report and vouchers submitted, and that these "do not supply sufficient in-

formation completely to distinguish between corpus items and income items. The Will of the decedent, creator of the trust, expressly empowers the Trustee to expend such portions of principal as the Trustee may deem reasonably required for the support of the life beneficiary, Thomas N. Berlage. * * * By reason of this power, * * * and by reason of the impossibility of your Auditor's determining the items properly includable, respectively, in corpus or income, your Auditor has followed generally the form of the Trustee's report with respect to disbursements. * * * The items shown in the pages of the [Trustee's] report numbered, consecutively, as pages three through seven are not verified by any separate vouchers, but your auditor relies for verification * * * upon the statement of August L. Lahr * * * that he had examined the vouchers supporting all of said items and found them adequate for the statement of his account. Your auditor * * * represents * * * that the life beneficiary may be indebted to the corpus of the estate for overpayment of income, but that due to the inconclusive character of the items of income and expense, receipts and disbursements, it cannot be determined if this is true and your auditor recommends that such overpayment, if any there be, be determined by a subsequent audit. * * * There is no information supplied to your auditor which will determine the assets of the estate coming into the hands of the trustee at the inception of the trust and your auditor, therefore, cannot include in his audit a proper charge against the trustee therefor, * * *." The Auditor's report showed the receipt of $4,500 from C. B. Wertheim as a "contribution", and the same cash balance as the trustee's report, against which he charged auditor's fees, a counsel fee to the solicitor for the trustee and court costs, totaling $1260.10.

Voluminous objections to the report were filed by T. N. Berlage, on his own account and on behalf of his sons, T. N. Berlage, Jr., and Bruce Berlage, still a minor. Among other objections, it was pointed out that the audit did not distinguish between corpus and income or con-

tain any exact dates. It was stated that the item of $4,500 was an advance on his account, by his sister Mrs. C. B. Wertheim, for which he had made himself personally liable; that Mrs. Wertheim also advanced two sums of $790.87 and 704.79 to the trustee and his solicitor, respectively, on February 2, 1953, not shown in the trustee's report; and that the report omitted to mention a claim of $1866.76 by Bruce Berlage against the estate, which had been approved by the trustee. He also stated that an item of $697.28, originally on deposit in the Hanover bank to the credit of the estate, was withdrawn by him, and is improperly credited to the cash balance shown. He stated that he was willing to prepare a statement by years of the estate's operation, and have it approved by Lahr. He specially objected to the allowance of the auditor's fee and the counsel fee, on the ground that they were not earned, there was no testi mony to support their allowance and that Brown had previously been paid $600 as shown by the trustee's account. A hearing was held, at the conclusion of which the Chancellor passed the order appealed from.

The appellee filed in this court a motion to dismiss the appeal on the ground that it presents no question tried and decided by the court below, and to expunge from the record certain statements of fact in regard to the hearing below, not appearing in the transcript. Attached to the motion were some fifty pages of papers purporting to be letters written by Berlage to the solicitor for the trustee and others. The appellant filed a motion to strike the motion to dismiss and expunge from the record the appellee's statement of facts and papers attached, to which appellant filed an answer, quoting other purported letters. We postponed hearing of these motions until the hearing on the merits.

The motion to dismiss the appeal is properly before us, but it is without merit. The written objections to the Auditor's report were before the Chancellor and were impliedly overruled when the order was signed. *Walker v. Safe Deposit & Trust Co.*, 192 Md. 695, 704. The

order is clearly an appealable one. *Fetting v. Flanigan,* 185 Md. 499, 506. The motions to expunge on both sides are granted. The statements of fact in the appellant's brief are not supported by the transcript, and the papers attached to the appellee's motion and the quoted matter in the appellant's answer thereto are not contained in the transcript.

On the merits of the case, it seems clear from our recital of the chain of events that to a considerable extent the difficulties faced by the court, the trustees and their successive attorneys, were due to the persistent interference in the management of the estate by the appellant, who seemed to regard the whole matter as a personal and family affair. This attitude was unjustified, since the will itself lodged the authority in the trustee, and not in the life tenant, and even in the matter of his occupancy of the farm property the will left the determination to the trustee, in the exercise of "prudent administration". Of course, after the trust was placed under the supervision of the court, it became incumbent on the trustee to obtain court approval of his actions and there was still less reason for interference by the life tenant.

The appeal is by the life tenant alone, and if he were the only person concerned, it might be contended that his course of conduct estopped him from attacking the lack of vouchers to support the account which were held by him or his representative Lahr, and never in the trustee's possession. Cf. *Frazier v. Gelston,* 35 Md. 298, 312. However, the rights of remaindermen are involved, two of whom were represented by a guardian *ad litem* who submitted their rights to the court's determination, and one of whom is still a minor, as we have noted. Under these circumstances, we think that the patent irregularities in the Auditor's account, pointed out by the appellant, cannot be overlooked. Even if we assume, without deciding, that the ratification of the account would not be conclusive, as against an infant party, or as to possible future claims by remaindermen against the life tenant, or the trustee's bond, this would not justify our

approval of an accounting that is incomplete and inaccurate on its face. It is well settled that such an accounting must be precise, *Cole v. Boarman,* 51 Md. 229, 232, complete and accurate, *Lawson. v. Burgee,* 131 Md. 436, 443, and the proceedings regular, *Noble v. Birnie,* 105 Md. 73, 79. Obscurity visits responsibility upon the trustee. *Hatton v. Weems,* 12 G. & J. 83, 108. See also *Restatement, Trusts,* § 172.

In the instant case there has never been a proper statement of the assets and liabilities of the trust estate taken over by the trustee, or a differentiation between principal and income. We cannot accept the Auditor's statement that the confusion here must be accepted because under the will the life tenant may, under some circumstances, be entitled to payments of principal. There is no evidence that the trustee ever exercised the power to entrench on the principal, or that the trustee deemed it necessary for the support of the life tenant and his household. Nor can we accept the statement that it is impossible to separate the items of principal and income. Surely, the arm of the equity court is not so powerless. The suggestion that the life tenant may be indebted to the corpus for overpayment of income is only a gratuitous surmise, and the recommendation that such overpayment, if any, be determined by a subsequent audit, would only defer to a still later period, an accounting that is long overdue.

It may be noted that the appellant contends that he has, in fact, not received any income at all, since the account is only brought into balance by alleged donations from a third party or parties, and by treating the proceeds of the various sales as current income. We see no reason why these and other issues of fact and accounting practice could not be resolved. If vouchers have been lost, secondary evidence may be available. Deferring the matter to some later accounting would only add to the difficulties of proof. Under the circumstances, we must reverse the order and remand the case for further proceedings not inconsistent with the views

here expressed.  At this stage of the case we must disapprove the allowance of the Auditor's and counsel fees, without prejudice to the allowance of proper fees upon the statement of a proper account by the trustee.

*Order reversed, and case remanded, costs*
*to be paid out of the trust estate.*