738 A.2d 904

**William H. JACOB**

v.

**Michael W. DAVIS, et al.**

**No. 1592, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Oct. 7, 1999.

434

436

Christopher Wheeler (Luman, Lange & Wheeler, on the brief), Washington, DC, for appellant.

John S. VanderWoude (Heather S. O'Connor, Eccleston and Wolf, P.C., Jerrold A. Thrope and Gordon Feinblatt, Rothman,

Hoffberger and Hollander, LLC, on the brief), Baltimore, for appellees.

Argued before DAVIS, SONNER and ADKINS, JJ.

ADKINS, Judge.

Appellant William H. Jacob (Bill) is the sole remainderman of two trusts established under the last will and testament of his father, John B. Jacob (John). Appellant sued Michael W. Davis, the surviving trustee of those trusts, and Davis's law firm, Ahlstrom & Davis, P.A., appellees, alleging numerous violations of appellees' fiduciary duties as trustees, and seeking an accounting, other equitable relief, and damages. The complaint included the following counts: 1) breach of fiduciary duty; 2) declaratory relief; 3) injunctive relief; 4) breach of contract; 5) tortious breach of covenants of good faith and fair dealing; 6) negligence; 7) trover and conversion; and 8) an accounting and establishment of a constructive or resulting trust. Ruling on a motion made by appellees at the end of appellant's case, the trial court entered judgment pursuant to Maryland Rule 2–519 in favor of appellees on all eight counts. This appeal was timely filed from that judgment.

## FACTS

John died on January 22, 1994, leaving an estate valued at $853,164, and a will that created two trusts known as the Marital Trust, and the Family Trust, respectively (collectively, "the Trusts"). John's surviving wife, Harriett Bell Jacob (Harriett) was the income beneficiary of the Trusts, and appellant was the remainder beneficiary. Harriett, appellant's stepmother, had the right to make certain withdrawals of principal from the Family Trust, limited in amount and timing, and Davis, as independent trustee, had the authority to make discretionary distributions of principal from the Trusts to Harriett "as, in the sole and absolute discretion of [Davis], are necessary, desirable or appropriate for the health, education and support of [Harriett] in [her] accustomed manner of living." The will directed that "in exercising such discretion,

the Trustee may take into account other financial resources of the beneficiaries under consideration." Harriett, was prohibited from participating in the discretionary decision to distribute principal to her.

John bequeathed his residuary estate to the Marital and Family Trusts. The size of each trust was determined by a formula, which directed that the Family Trust receive an amount equal to the maximum amount that could pass free of federal estate taxes by utilizing the credit against estate and gift taxes ("unified credit") available to John, and the Marital Trust receive the remainder. Application of this formula resulted in zero federal estate tax payable by John's estate, because his available tax credit allowed $600,000 to pass to the Family Trust free of tax. Further, there were no taxes payable with respect to the assets passing to the Marital Trust, because the trust qualified for the federal estate tax marital deduction ("marital deduction"), and thus any tax was deferred until the death of Harriett.

Appellee Davis and Harriett were designated as personal representatives of John's estate. The personal representatives were required to make an election on his federal estate tax return identifying what portion of the Marital Trust they elected to qualify for the marital deduction. Although all assets passing to the Marital Trust *could* so qualify, an election was required to effectuate the marital deduction.

The personal representatives were required to show on the estate's Administration Account filed with the Orphans' Court the exact amount passing to the Marital Trust.[1] The First and Final Administration Account for John's estate, filed November 7, 1994, showed that $80,223 was to be distributed to the Marital Trust. This was consistent with the $80,476

---

1. Under Federal Estate Tax Law, if the personal representatives did not elect to qualify the full Marital Trust for the marital deduction, taxes generated by the unqualified assets would be owed at John's death. *See* I.R.C. § 2056(b)(7) (1998). Such "partial election" would not, however, diminish the amount of the assets that should pass to the Marital Trust pursuant to the directions in John's will.

elected by the personal representatives to qualify for the marital deduction on John's federal estate tax return.[2] In fact, however, no assets were distributed to the Marital Trust, and this trust never was funded. John's entire residuary estate was distributed by appellee Davis and Harriett, personal representatives, to the Family Trust. The ·discrepancy between 1) the amount designated as passing to the Marital Trust on the distribution account for John's estate ($80,476), which is consistent with the federal estate tax return, and 2) the actual amount distributed (zero), is one subject of appellant's complaint.

Another subject of appellant's complaint is the refusal of appellee Davis to provide appellant with an accounting for the Trusts. Appellant first requested an accounting in May of 1996, by letter to a paralegal at Ahlstrom & Davis, P.A., who assisted Davis in estate and trust matters. Responding in a May 28, 1996 letter (May 28 letter), Davis told appellant:

> Your letter raised an interesting point regarding my duties to you under the Trust Agreement for the aforesaid Trust. As you know, I am a co-Trustee with your stepmother, Harriett Bell Jacob, of this Trust. Pursuant to the provisions of the Trust, the Trustee is to render an annual account to the "current income beneficiaries" of the Trust. At present, your stepmother is the only income beneficiary. Thus, I as Trustee, have no obligation to provide to you an accounting for the Trust.

> If you wish, I will forward a copy of your letter to [the paralegal] to your stepmother for the purpose of obtaining her approval to give you an accounting for the Trust. Since she and I are co-Trustees, and since she is the sole income beneficiary, if I were to provide such an accounting to you without obtaining her consent first, I would be breaching my fiduciary obligations to her. Please let me know if you wish for me to do this.... Your stepmother is very active in the administration of this Trust, and, in fact, makes all

---

2. The minor discrepancy between these two figures is not material nor the subject of any dispute.

decisions regarding any distributions from the Trust. My only role at this point is to facilitate her administration and to provide to her any counsel that she may wish regarding the Trust.

After receiving this letter, appellant called Harriett to request her permission for an accounting, but she declined. Harriett died in January 1997, leaving an estate valued at approximately $1,500,000.

On April 17, 1997, almost a year after his first request, appellant again requested by letter an accounting of the Trusts, this time through his attorneys, Christopher Wheeler and Gene C. Lange (collectively, "Wheeler"). In the letter Wheeler asked that the accountings "cover all assets, property, receipts, expenditures, distributions, trustee and other commissions, attorneys' and other professional fees, and any and all payments or transfers to and from the two trusts and [Harriett's] Estate." The letter also requested all "books, records, tax returns, court filings or other information" concerning these items. Wheeler requested that the information be furnished by April 25, 1997. In response to this letter, Davis wrote to Wheeler on April 18, 1997, and said, *inter alia:*

[P]lease be advised that the John B. Jacob Marital Trust was never established since the total assets that were available from the Estate of John B. Jacob to be distributed to his Testamentary Trust did not exceed $600,000.

Davis enclosed in his letter copies of the following documents: 1) inventory and distribution account for John's estate; 2) statements from the brokerage firm of Ferris, Baker Watts for the Family Trust; 3) the check register for the Family Trust checking account; 4) 1995 and 1996 balance sheets, prepared by the accountant for the Family Trust; 5) 1995 and 1996 "general ledgers," prepared by the accountant, showing income and other deposits received, disbursements, plus sales of stocks; 6) income tax returns for 1995 and 1996 filed by the Family Trust; 7) a summary of profits and losses for 1995 and 1996 showing $143,543 in total distributions to Harriett over the two-year period; and 8) John's will and First and Final

Accounting for John's Estate. Davis also provided a two-page document, unsigned, titled "John Jacob Family Trust, Recap of Transactions." Pertinent portions of this recap are reproduced below:

*JOHN B. JACOB FAMILY TRUST*

RECAP OF TRANSACTIONS

1. *JAN. '95*

 2 taxable GNMA/FNMA bonds (35,000/ea.) transferred to Harriett's individual account, as well as 6,000 in cash

 This transfer was to satisfy the following: $30,000 specific bequest under Mr. Jacob's Will, the family allowance of $5,000, and all income and interest earned by the Estate during the time of administration

 \* \* \*

2. *MAR. '95*

 400 shares of Pfizer, 100 shares of United Technology transferred to Harriett as reimbursement for living expenses she paid out-of-pocket during the course of Estate administration ($28,997 rent to Vantage House, $12,830 other living expenses and medical expenses paid on behalf of Mr. Jacob)

3. *APR. '95*

 Balt. Co. MD RFDG, 5.7% ($15,000) bond sold to provide cash for expenses

4. *MAY '95*

 100 shares of AT & T ($5600) transferred to Harriett's account—per JD Ring, this was Trust income due to Harriett and she took the shares of AT & T rather than cash. Trust income thru May was approx. $9,290. $4,000 was transferred directly from FBW, and the remainder was taken in stock.

 \* \* \*

5. *DEC. '95*

$10,000 check requested from FBW to put cash into First National Trust checking for expenses.

6. *DEC. '95*

5% of the value of the Trust to go to Harriett pursuant to her 5/5 powers—she elected to take the $20,000 Md. 1 st Ser. 6.5% bond and the $10,000 P.G. Co. MD IDA 6.65% bond. These were then transferred into her account.

\* \* \*

7. *DEC. '96*

5% of the value of the Trust to go to Harriett pursuant to her 5/5 powers—she elected to take $10,000 Md. St. Dept. Trans. 6.375%; $15,000 MD CDA 6.3%, and 142 shares of Southern Co. ($3,159 value)

8. *JAN. '97*

$4,750 cash transferred from the Ferris, Baker Watts into First National Bank Trust account (in anticipation of having to pay medical bills)

There have been a total of 26 checks written from the Trust checking account since it was opened. 21 of the 26 checks were written to Vantage House for the monthly rental. The other checks were as follows:

1. Ahlstrom & Davis, P.A. 12/95—$1,931.40 (fees)

2. Harriett Jacob 6/96—$10,000 (repayment of loan—no interest requested)

3. Jeffrey D. Ring & Co. 10/96—$1,350 (fees)

4. Ahlstrom & Davis, P.A. 1/97—$3,095.63 (fees)

5. IRS 1/97—$327.73 (taxes due on '94 return)

The recap summarizes distributions to Harriett, but often does not designate whether they were principal or income. For example, Harriett's monthly expenses at Vantage House were paid in March 1995 from the Family Trust, but not designated as either principal or income. In addition to the Vantage House payments, stocks, bonds, and cash with an approximate value of $143,000 [3] were transferred to her during

---

**3.** This figure does not include the amounts distributed to satisfy a $30,000 bequest to her in John's will or her $5,000 Family Allowance accorded Harriett by law.

the two-year period. According to the Family Trust checkbook, payments to Vantage House totaled $49,572.67. These distributions to Harriett or for her benefit substantially exceeded the Family Trust income during this period.

With respect to the other information requested by Wheeler, Davis said:

> With such short notice, the above is the best that we can do to comply with your request that we provide you information by April 25, 1997. From these documents, you should be able to understand the relationship between the Estate of John B. Jacob, the John B. Jacob Family Trust, and Harriett Bell Jacob. I think you will find that there were no distributions from the Trust that did not comply with both the intent and the provisions of the Last Will and Testament of John B. Jacob.

Davis did not provide any further information to explain the discrepancy in accounting regarding the Marital Trust funding. Nor did he provide information as to how the expenses of the trust, such as trustees' commissions and accountant fees, were allocated between the income beneficiary and the remainderman. Further, no information was provided to show how in kind distributions of stock to Harriett were valued, *e.g.*, at inventory value or fair market value.

Davis did offer to meet with appellant and counsel and the accountant for the estate to discuss their concerns. On May 5, 1997, Wheeler replied that "a meeting would probably be beneficial, but [we] would prefer that we have a little longer to digest the information you provided." In that letter Wheeler also said: "We have noted an omission in the documents you provided. As a result we hereby request a complete accounting of (including all documents related to) the transfer of assets owned by John B. Jacob at his death, to the Family Trust, for the period October, 1994, through January, 1995." Wheeler also requested the federal estate tax return for John's estate.

Davis responded to Wheeler's letter on May 7, and enclosed the Ferris, Baker Watts statements for the period requested

and the federal estate tax return. With respect to the statements, appellee Davis commented: "[p]lease note that there may be discrepancies between these statements and the accounting that was filed in the Orphan's Court.... The Accounting does not provide a means to show changes in the prices of the equities during the time from when the estate is opened until the time the estate is closed." He also said:

Please advise Mr. Jacob that we are currently in a position to wind up his father's trust and make the final distributions as required under [his father's] Last Will and Testament. Until any potential claims that Mr. Jacob wants to make are resolved, however, we cannot wind up the trust. We await Mr. Jacob's pleasure with regard to the timing of this process.

On May 23, 1997, Wheeler again wrote to Davis, and requested that he "explain the justification for the removal of" five stocks and seven bonds from the trust, as well as other specific items, suggesting that these items "could only be removed from the Family Trust pursuant to the terms and intent of the Family Trust established by Mr. Jacob." The record does not reflect Davis's response to this letter. Bill testified that he never received any explanation or accounting from Davis regarding the trust principal that was distributed to Harriett. Appellees took the position at trial and on appeal that they had no obligation to account to Bill.

Although the letters refer to several telephone conversations between counsel, there is no indication that the parties ever had a meeting. Appellant filed suit on July · 3, 1997.

## DISCUSSION

We must determine the validity of the trial court's entry of judgment on all eight counts of the complaint in favor of appellees at the end of appellant's case. Our major focus in this opinion will be on Counts I, II, and III, all of which rest on the equitable claim that appellees violated their fiduciary duties as trustees. We vacate the judgment entered on these counts, and remand the case to the circuit court for further

proceedings on these counts. We affirm the lower court's judgment on Counts IV through VIII.

## I.

### Count I—Breach of Fiduciary Duty

Appellant alleged several breaches of fiduciary duty by appellees,[4] and included repetitive allegations in his complaint. We have distilled the alleged breaches into three separate categories, and discuss each separately.

## A.

### Entitlement to Accounting

Appellant complains that appellees never provided a full accounting of the Trusts created under John's will. Appellees contend that they had no obligation to provide an accounting to appellant either during the lifetime of Harriett or after her death. Alternatively, they claim that the documents they provided to appellant in April 1997, after her death, were a sufficient accounting of the Trusts.

Appellees rely on section 10.02 of John's will, which provides:

My Trustee shall be excused from filing any account with any court; however, my Trustee shall render an annual (or more frequent) account and may, at any other time, including at the time of the death, resignation, or removal of any Trustee, render an intermediate account of my Trustee's administration to such of the then current income beneficiaries who are of sound mind and not minors at the time of such accounting. The written approval of such accounting by all of such income beneficiaries shall bind all persons then having or thereafter acquiring or claiming any interest

---

4. John named both appellee Davis and his law firm, Ahlstrom & Davis, P.A., a professional corporation, to serve as co-trustees with his wife. By referring to the appellees collectively as trustees, we do not intend to express any opinion on whether a professional corporation can serve as a trustee, an issue not raised in this appeal.

in any trust, and shall be a complete discharge to my Trustee with respect to all matters set forth in the account as fully and to the same extent as though the account had been judicially settled in an action or proceeding in which all persons having, acquiring, or claiming any interest were duly made parties and were duly represented.

The trial court held that under the terms of the Trusts and applicable law, the trustees had no obligation to account to a remainderman such as appellant during the lifetime of the income beneficiary.[5] The trial court seemingly agreed with appellant that an accounting was due after death, but found that the documents provided by appellees after Harriett's death sufficed. Specifically, the court said:

[T]he Ferris, Baker Watt statements certainly show with respect to the stock portfolio [of] which much of this estate was comprised, indicates the transactions that took place, and also shows at the end [sic] of the taxable income. So there certainly is a reference as to what income was derived in a particular year.

We do not agree with appellees' view that appellant is not entitled to request and obtain an accounting of the Trusts. The leading authorities on trusts are unequivocal in their articulation of the right of the remainder beneficiary to an accounting during the lifetime of the income beneficiary and after his or her death. Austin W. Scott and William F. Fratcher, *The Law of Trusts,* (Vol. IIA 4th ed.1987) § 172 explains:

A trustee is under a duty to the beneficiaries of the trust to keep clear and accurate accounts. His accounts should show what he has received and what he has expended. They should show what gains have accrued and what losses have been incurred on changes of investments. **If the trust**

---

5. The court also relied on the testimony of appellees' expert, Calvin H. Cobb, III, interpreting that testimony to mean that no accounting was required. Mr. Cobb did agree that the will did not require an accounting to a remainder beneficiary. He did not, however, agree that no accounting was required under applicable law.

**is created for beneficiaries in succession, the accounts should show what receipts and what expenditures are allocated to principal and what are allocated to income.**

If the trustee fails to keep proper accounts, all doubts will be resolved against him and not in his favor ...

Not only must the trustee keep accounts, but he must render an accounting when called on to do so at reasonable times by the beneficiaries. Where there are several beneficiaries, any one of them can compel an accounting by the trustee. The fact that a beneficiary has only a future interest ... does not preclude him from compelling the trustee to account.

*Id.* (emphasis added).

George Bogert, *The Law of Trusts and Trustees,* (Rev.2d ed.1983) § 961 takes a similar view:

[T]he beneficiary is entitled to demand of the trustee all information about the trust and its execution for which he has any reasonable use....

If the beneficiary asks for relevant information about the terms of the trust, its present status, past acts of management, the intent of the trustee as to future administration, or other incidents of the administration of the trust, and these requests are made at a reasonable time and place and not merely vexatiously, it is the duty of the trustee to give the beneficiary the information for which he has asked.

Both Scott, *supra,* and Bogert, *supra,* cite numerous cases in support of the rule that a remainder beneficiary is entitled to an accounting. Scott, *supra,* § 172 at 454; Bogert, *supra,* § 973.

Restatement (Second) of Trusts § 172, comment (b) states the rule in like terms:

The beneficiary may by a proper proceeding compel the trustee to render to the proper court an account of the administration of the trust.... The trustee may be compelled [to] account not only by a beneficiary presently entitled to the payment of income or principal, but also by a

beneficiary who will be or may be entitled to receive income or principal in the future.

Maryland law is consistent with the law of other states. The Court of Appeals liberally construed the class of those beneficiaries who have a right to an accounting in the case of *In Re Clarke's Will*, 198 Md. 266, 81 A.2d 640 (1951). There, a remainder beneficiary sought an accounting and declaratory relief and alleged that the trustee planned to sell a farm that was a trust asset and apply the proceeds for the benefit of her husband, an income beneficiary of the trust. The Court held that the contingent remainderman had standing to seek an accounting, and explained: "If the petitioner has any interest at all he is entitled to invoke the court's protection." *Id.* at 273, 81 A.2d 640; *see also Baer v. Kahn*, 131 Md. 17, 101 A. 596 (1917).[6]

In *Shipley v. Crouse*, 279 Md. 613, 370 A.2d 97 (1977), the Court of Appeals articulated the general rule:

> While ... in the ordinary case, beneficiaries are entitled to receive 'complete and accurate information as to the administration of the trust' and 'to know what the trust property is and how the Trustee has dealt with it,' this is not absolute, if the trustee renders periodic reports showing collection of income and disbursements, if the trustee is acting in good faith and is not abusing his discretionary powers.

*Id.* at 625, 370 A.2d 97 (citations omitted). The *Shipley* Court did not indicate that the rights of the plaintiffs, who were remaindermen, were more restricted because they had no immediate possessory interest. The statement of the rule in *Shipley*, however, was *dictum* because the plaintiffs did not obtain the disclosures they desired. The Court held that a trustee's duty to account did not require that the trustee

---

**6.** The Federal District Court for the District of Maryland stated in *dicta* in *Davidson v. Blaustein*, 247 F.Supp. 225, 228 (D.Md.1965), that a remainder beneficiary is not entitled to an accounting until its interest becomes possessory. In our view, this decision represents an unduly restrictive view of a beneficiary's right to an accounting.

disclose the specifics of delicate negotiations with a potential buyer regarding the sale of a business owned by the trust, especially when remaindermen had previously expressed their agreement that the business be sold. *Id.* at 625–26, 370 A.2d 97.

Appellees argue that section 10.2 of the will relieves them from any obligation to account to a remainder beneficiary. This section allows the trustee to provide an accounting at any time, and provides that if such accounting is approved in writing by the then income beneficiaries, then the trustee is discharged with respect to the matters covered by the account. Appellees would have us apply this section to modify the common law obligation of a trustee to account.

To our knowledge, no Maryland appellate decision has addressed the extent to which a decedent or testator may limit the common law duty of a trustee to account in a court of equity. Nor do we find any statute or rule, addressing this point. Bogert, *supra,* asserts that a trust beneficiary has a right to an accounting, notwithstanding language in the trust purporting to limit its obligation to account:

A [testator] who attempts to create a trust without any accountability in the trustee is contradicting himself. A trust necessarily grants rights to the beneficiary that are enforceable in equity. If the trustee cannot be called to account, the beneficiary cannot force the trustee to any particular line of conduct with regard to the trust property or sue for breach of trust. The trustee may do as he likes with the property, and the beneficiary is without remedy. If the court finds that the settlor really intended a trust, it would seem that accountability in chancery or other court must inevitably follow as an incident. Without an account the beneficiary must be in the dark as to whether there has been a breach of trust and so is prevented as a practical matter from holding the trustee liable for a breach.

Bogert, *supra,* § 973 at 467. In the present case we need not decide this interesting issue because we do not interpret section 10.02 in light of the will as a whole, to limit the

trustees' obligation to account under the present circumstances.

When interpreting a will, we must gather the intention of the testator from the language of the entire will. *See LeRoy v. Kirk*, 262 Md. 276, 280, 277 A.2d 611 (1971). Further, we must construe the provisions of a will to be consistent, rather than to be in conflict. *See Veditz v. Athey*, 239 Md. 435, 448, 212 A.2d 115 (1965).

When section 10.02 is considered in light of section 10.08, the former cannot reasonably be construed to deny appellant an accounting based on Harriett's consent to some prior accounting. Section 10.08 provides:

> Notwithstanding any other provision hereunder, no Trustee hereunder shall have a vote or otherwise participate in any decision regarding whether, and to what extent, any discretionary payment of principal or interest shall be made or allocated to or for such Trustee's personal benefit or to or for the benefit of any person for whose support such Trustee may be legally obligated. Any such decision shall be made by the co-Trustee then serving, or if there is no such co-Trustee, then the Trustee shall appoint a co-Trustee to make such decision.

Clearly, if Harriett cannot participate in a decision to distribute principal to her, then her consent to such distribution cannot be considered binding upon a remainderman whose interest is adversely effected. *Cf. Madden v. Mercantile–Safe Deposit & Trust Co.*, 27 Md.App. 17, 339 A.2d 340 (1975) (any laches which could have been chargeable to income beneficiary regarding misconduct of trustee cannot be binding upon the remaindermen). Since appellant's claim for accounting is based upon his contention that principal amounts were improperly distributed to Harriett, section 10.02 of the will does not bar his suit. *See also* discussion in Section IB of this opinion.

Nor do we interpret the provision in section 10.02 of the will that the trustees "shall be excused from filing any account with any court" to mean that the testator intended to remove the jurisdiction of a court of equity to require an accounting

upon the reasonable request of a beneficiary. *See Salter v. Salter,* 209 Ga. 90, 70 S.E.2d 453, 458 (1952). *See also* Bogert, *supra,* § 973.

■ Appellees suggested at oral argument that appellant was not entitled to an accounting in this proceeding because a court can only require an accounting if it assumes jurisdiction over the trust, and appellant did not follow the procedure under Maryland Rule 10–501 to request that the court do so. We do not agree that a petition for assumption of jurisdiction pursuant to Rule 10–501 is required in order that a court order an accounting, and find *Baer, supra,* instructive. In *Baer* the Court held that the trustee's mere refusal to account did not justify his removal, but that if an accounting were

> necessary in order to ascertain whether the trustee is executing the trust fairly and without abuse of the discretionary power reposed in him, a Court of Equity, upon being applied to, should order such information to be given; but until that is done and it is found that the trustee is not administering the trust in good faith, or is abusing the discretionary power granted him under the will, the Court should not against his wishes, assume supervisory jurisdiction of the trustee's discretionary powers.

*Baer,* 131 Md. at 29, 101 A. 596. What we glean from *Baer* is that seeking and obtaining an accounting will sometimes precede a request for a court to assume jurisdiction over a trust, and the results of the accounting may be the "reason for seeking the assumption of jurisdiction by the court ..." required under Rule 10–501. Thus, we hold that appellant was not required to petition pursuant to Rule 10–501 in order to obtain an accounting.

In sum, we hold that appellant was entitled to an accounting during the life of Harriett and at her death, notwithstanding the language in section 10.02 of John's will.

## B.

### The Information Furnished by the Trustees

■ The trial court found that the documents provided by appellees in April 1997, were sufficient to meet any obligation

to account because they provided the recap, brokerage statements from the firms holding the estate's securities, and a list of payments and receipts for the two-year period of the Family Trust. We do not agree with the trial court's conclusion that this information sufficed, because appellees still failed to provide certain critical information. This information is separated by category and discussed below.

### i.

### Allocations of Expenses and Receipts Between Income and Principal

One of appellant's complaints about the information furnished by appellees is that there was no allocation of receipts and expenses to either trust income or trust principal as required under Md.Code (1974, 1991 Repl.Vol.), §§ 14–201 *et seq.* of the Estates and Trusts Article ("Principal and Income Act"). Appellant's expert witness testified that, based on the records provided, it appeared that the trustees had made no allocation; and therefore, the burden of all expenses was borne by the remainder interest. Section 14–202 of the Principal and Income Act provides in pertinent part:

> (a) A trust shall be administered with due regard to the respective interests of income beneficiaries and remaindermen. A trust is so administered with respect to the allocation of receipts and expenditures if a receipt is credited or an expenditure is charged to income or principal or partly to each:
>
> (1) In accordance with the terms of the trust instrument, notwithstanding contrary provisions of this subtitle;
>
> (2) In the absence of any contrary terms of the trust instrument, in accordance with the provisions of this subtitle; ...

*Id.* at § 14–202. The remaining sections of the Principal and Income Act set forth detailed rules as to how a trustee should allocate receipts and expenses between the income beneficiary and the remaindermen.

■ The parties have not directed us to, nor have we found, any clause in John's will that would make the Principal and Income Act inapplicable. Further, a trustee's obligation to make allocations between income beneficiaries and remaindermen is an obligation well recognized in common law. *See Berlage v. Boyd,* 206 Md. 521, 532, 112 A.2d 461 (1955); Scott, *supra,* § 172 at 452, and cases collected therein ("If the trust is created for beneficiaries in succession, the accounts should show what receipts and what expenditures are allocated to principal and what are allocated to income."); Bogert, *supra,* § 970 at 377–78.

The documents that appear in the record do not make any allocations of receipts or expenses to principal or income. Income tax returns do not suffice for this purpose because federal law regarding what is taxable income, and what expenses are deductible from income, differs from determination of income and principal under the Principal and Income Act. Calvin H. Cobb, III, a lawyer specializing in estate and trust law, testified that he had reviewed all of the documents furnished by appellees, and was unable, based on that information, to reconstruct an accounting that made allocations between income and principal. Mr. Cobb testified that he "tried to recreate based on this information a proper accounting that would allocate income and principal [but there was] information that didn't reconcile . . . ." He observed that "it appears that rather than distributing net income to [Harriett], there was no effort to charge expense to income. They instead distributed gross income to [Harriett]."

■ A major theme advanced by appellees in defense is that appellant, in presentation of his case, was unable to demonstrate precisely where and how the trustees failed to follow their obligations under applicable law or John's will. "[T]he burden of proof on the issue of breach of trust is not initially on the fiduciary . . . ." *Goldman v. Rubin,* 292 Md. 693, 713, 441 A.2d 713 (1982). The burden, however, shifts to the trustee once the beneficiary has introduced a certain quantum of proof:

[T]he person who challenges the conduct of a trustee, must first allege that the trustee has a duty and has been derelict in the performance of this duty, and offer evidence in support of this allegation. Then, and not until then, does the trustee have the burden of rebutting the allegation. In the absence of such proof, there is no duty on the trustee to prove a negative: *i.e.,* that he has not been derelict in the performance of his duties.

*Id.* (quoting *Lopez v. Lopez,* 250 Md. 491, 501, 243 A.2d 588 (1968)); *see also Md. Nat'l Bank v. Cummins,* 322 Md. 570, 581–82, 588 A.2d 1205 (1991); *Wood v. Honeyman,* 178 Or. 484, 169 P.2d 131, 162 (1946); Scott, *supra,* § 172 at 452 ("If the trustee fails to keep proper accounts, all doubts will be resolved against him and not in his favor.").

We have reviewed all of the documents provided by appellees to appellant in response to appellant's request for an accounting. Based on our review, in conjunction with the testimony of Mr. Cobb, we conclude that appellant met his initial burden to show that appellees breached their fiduciary duties by failing to make any allocations between principal and income. Accordingly, it was incumbent upon appellees to come forward and explain this apparent failure. Without such explanation, the trial court should not have granted the motion for judgment on Count I.

### ii.

### Failure to Account for Non–Funding of Marital Trust: Marital Trust Bequest of $80,223 Pursuant To Formula In Will

Another deficiency asserted by appellant regarding the information furnished by appellees relates to the Marital Trust. The documents initially provided to appellant showed a $80,223 distribution to the Marital Trust from the estate, but nothing about a Marital Trust thereafter. After a second request by appellant's counsel, appellees advised counsel that this trust "was never established since the total assets that were available ... to be distributed from [John's estate] did

not exceed $600,000." No explanation was then offered regarding the discrepancy between appellees' non-funding of the Martial Trust and the $80,223 distribution shown on both the estate's administration account and John's federal estate tax return.

The assets held in John's estate may well have decreased in value between the date of John's death and the date assets were distributed from his estate. If such occurs, however, the personal representative must follow the funding formula set forth in the will to determine how the decrease is allocated between the Trusts. We explain below.

The size of the bequests to the Marital Trust and the Family Trust is determined by formula.[7] The formula is tied to the amount of assets that can pass free of tax to a decedent's heirs under federal estate tax law by application of an individual's "unified credit." I.R.C. § 2001 (1998). Expressed in non-technical terms, the federal tax law allows an individual to pass to his or her heirs, free of tax, assets totaling no more than $600,000 in value. For purposes of the federal estate tax, the value of each asset is determined as of the date of the decedent's death. When the values of the assets change during estate administration, at the time of distribution, the personal representative must look to the will for instructions regarding how to value those assets. In the

---

7. SECTION 7. *Marital Bequest.*
 7.01. If my wife, Harriett Bell Jacob, survives me by at least thirty (30) days, I give to my Trustee such amount, if any, which, when added to the total value of all interests in property passing or which shall have already passed at the time of my death to my wife (under other provisions of this Will, or outside of this Will, by operation of law, or otherwise) for which a marital deduction is allowable under the federal estate tax laws in effect at the time of my death, shall be equal to the maximum allowable marital deduction, reduced by any amount necessary to increase my taxable estate (for federal estate tax purposes) to the largest amount that can pass free of federal estate tax after taking into account all allowable credits, including, without limitation, the unified credit and the credit for state death taxes; provided, however, that any state death tax credit shall be utilized only to the extent that it does not require any increase in state death taxes payable.

absence of instructions, a Maryland statute governs. *See* Md.Code (1974, 1991 Repl.Vol.), § 11–107(2) of the Estates and Trusts Article ("E & T").

John's will did provide such instruction—section 7.02 requires the assets distributed to the Marital Trust

> shall be selected in such manner that the cash and other property distributed will have an aggregate fair market value fairly representative of the distributee's proportionate share of the appreciation or depreciation in the value to the date or dates of distribution of all property then available for distribution. Any property assigned or conveyed in kind to satisfy the aforegoing bequest shall be valued for that purpose at the value thereof as finally determined for Federal Estate Tax purposes.

John's personal representatives held the responsibility to determine how to allocate the residuary estate between the Marital Trust and the Family Trust. Under the funding formula set forth in section 7.02, if the estate assets decrease in value, the Marital Trust would be diminished on a pro rata basis with the Family Trust and would absorb no more than its pro rata share of such decrease. In light of this mandatory directive we do not see how the Marital Trust could be legitimately "wiped out" by a decrease in overall value, when the Family Trust bequest remained intact.[8]

The discrepancy regarding the funding of the Marital Trust is not explained by appellees' assertion that the "total assets that were available ... to be distributed ... did not exceed $600,000." Proof of the discrepancy was sufficient to place the burden on the trustees to offer a better explanation and accounting with regard to this issue. Accordingly, it was error for the trial court to enter judgment in favor of appellees in appellant's suit for such accounting.

---

**8.** Appellant's expert witness in the area of trust administration also addressed this issue when he opined that appellees committed a serious breach of fiduciary duty when they elected to qualify the Marital Trust for the federal estate tax deduction, and then failed to fund the Marital Trust.

Appellees suggest that the discrepancy regarding funding of the Marital Trust is only of theoretical concern because appellant is the remainderman under both the Marital and Family Trusts. We do not agree with this analysis because the terms of John's will differ with respect to principal distributions authorized to be made from each of the Trusts. Under section 8.03 of John's will, Harriett could withdraw annually the "greater of (a) Five Thousand Dollars ($5,000) or (b) Five Percent (5%) of the value of the principal of the Family Trust." By contrast, she had no right of withdrawal from the Marital Trust.[9] Thus, if the Family Trust were funded with assets that properly belonged to the Marital Trust, then the five percent of the trust subject to Harriett's withdrawal right became correspondingly larger. The record suggests that Harriett exercised this right in full. Thus, it appears that some assets that should have remained in trust for Bill were, in fact, distributed to Harriett.

The trial court rested its decision on the Marital Trust issue in part upon the following language in John's will:

> [The trustee] shall have the power to make any election required to be made to qualify the Marital Trust for the federal estate and/or gift tax marital deduction. If the federal estate tax laws applicable to my estate permit a partial election to be made or permit such an election with respect to a specific portion of the Marital Trust, my Trustee may in its discretion make such election with respect to less than all the Marital Trust, and such portion shall be treated for all purposes as a specific portion of [the Marital] Trust and as a separate Trust share. My Trustee shall not be liable for any decision made in good faith and with reasonable diligence with respect to such election.

---

9. Both of the Trusts provided that the independent trustee "shall pay over to my spouse amounts of the principal of the [Trust], as, in the sole and absolute discretion of my Trustee, are necessary, desirable or appropriate for the health, education and support of my spouse in my spouse's accustomed manner of living."

The discretion accorded the trustees by this section to make a "partial election" allows the trustees to "qualify the Marital Trust for the federal estate tax marital deduction." Such partial election will have an impact on the amount of the Marital Trust that qualifies for the marital deduction, but it does not cause any portion of the Marital Trust to be merged with the Family Trust. As the clause indicates, if a partial election is made, the portion elected to so qualify, "shall be treated for all purposes as a specific portion of this Trust and as a separate Trust share." The trustees' power to create two separate trusts which together comprise the Marital Trust is not equivalent to the power to transfer assets from the Marital Trust to the Family Trust. Harriett's power to withdraw principal extends only to the Family Trust, and does not extend to the Marital Trust, even if divided.

Appellees also suggest that because Harriett bequeathed her estate to trusts for the benefit of Bill's children, appellant's concern about the size of the Trusts is only theoretical. Regardless of any emotional appeal that this contention may have, it has no legal merit in its own right.[10] To the extent that assets were improperly distributed to Harriett, and passed to trusts under her will, Bill is denied the right to those assets, even though his children receive an interest as trust beneficiaries.

Although we have expressed our disagreement with appellees' explanation, offered in their April 18, 1997 letter to appellant, for why the Marital Trust was not funded, we do not now hold that John's estate was distributed improperly. We think that such decision must be reserved until appellees provide a full accounting of how they applied the formula in the will to distribute assets to the Marital Trust and Family Trust, respectively. We do hold that, in the absence of a

---

**10.** Our opinion on this point does not take into account the potential effect of Bill's decision not to make a claim against Harriett's estate to recover assets wrongfully distributed to Harriett. Such issue may arise in proceedings in the circuit court upon remand of this case.

better explanation, the trial court should not have granted the motion for judgment on Count I.

## C.

### Whether Appellees Improperly Delegated Discretion Regarding Distribution of Principal to Co-trustee Harriett

Appellant alleges that appellees also breached their fiduciary duties by improperly delegating to Harriett the authority to make discretionary distributions to herself for her "health, education and support" pursuant to section 8.04 of John's will. Appellant further contends that, to the extent the appellees actually exercised any discretion, they improperly failed to consider Harriett's financial circumstances before making principal distributions from the Family Trust. They point out that, at her death, Harriett had assets of approximately $1,500,000, and that she clearly had sufficient assets and income to cover her needs without principal distributions. Appellees respond that the distributions were justified under the will, and not subject to challenge by appellant.

The will, indeed, does call for quite liberal distributions at the discretion of the trustees. Section 8.04 provides:

> In addition to any distribution of income or principal or both otherwise provided for herein, my Trustee may pay over to my wife such amounts of the principal of the Family Trust as, in the sole and absolute discretion of my Trustee, are necessary, desirable or appropriate for the health, education and support of my spouse in my spouse's accustomed manner of living. In exercising such discretion, the Trustee may take into account other financial resources of the beneficiaries under consideration.

As indicated previously, the will also restricts Harriett from any participation in the decision to distribute principal.

The discretion accorded in the will to make principal distributions to Harriett was lodged in appellees alone. It is a

fundamental principle of trust law that a trustee may not delegate discretionary duties. Professor Scott explains:

> Where there are several trustees it is the duty of each of them, unless it is otherwise provided by the terms of the trust, to participate in the administration of the trust. A trustee is under a duty not to delegate to third persons the doing of acts that he can reasonably be required personally to perform. Similarly, a trustee cannot properly delegate the doing of such acts to his co-trustees. It is improper for one of the trustees to leave to the others the control over the administration of the trusts. A trustee who remains inactive is guilty of a breach of trust.

Scott, *supra*, § 184 at 560–61. Maryland decisions are in accord with Scott's statement of the rule. *See Waesche v. Rizzuto*, 224 Md. 573, 587, 168 A.2d 871 (1961); *Caldwell v. Graham*, 115 Md. 122, 128, 80 A. 839 (1911) ("where one trustee delegates to another important duties of the trust, and under such circumstances funds have been wasted, he is liable to account to th[e] parties injured.").

When a discretionary power is lodged in a trustee, the courts are loathe to interfere with the exercise of that discretion. This reluctance disappears, however, when the trustee has delegated the power or failed to exercise its discretion. As the Court of Appeals explained in *Waesche:*

> A court of equity will not interfere in the exercise of the discretionary power conferred on the trustees **provided that this power was honestly and reasonably exercised.** However, it must appear that the trustees acted in good faith, having a proper regard to the wishes of the testator and to the nature and character of the trust reposed in them.

*Waesche*, 224 Md. at 587, 168 A.2d 871 (emphasis added). When a trustee is given discretion to invade the principal and make principal distributions to an income beneficiary, the trustee's failure to exercise its judgment regarding that discretion will constitute an abuse of discretion. *See Bregel v. Julier*, 253 Md. 103, 109, 251 A.2d 891 (1969); *see also* Bogert, *supra*, § 812 at 248 and n.83.

Appellant alleged that appellees did not exercise their power to distribute principal to Harriett, and introduced the May 28 letter to support that allegation. In that letter, appellee Davis plainly asserted that "[y]our stepmother is very active in the administration of this Trust **and, in fact, makes all decisions regarding any distributions from the Trust**. My only role at this point is to facilitate her administration and to provide to her any counsel that she may wish regarding the Trust." (Emphasis added). This letter is highly significant because it constitutes an admission by appellee Davis that he was not participating in the decision whether to make principal distributions from the Family Trust, when, under the will, he was the *only* one authorized to make this decision. Surprisingly, appellees appeared to express their approval of Harriett's controlling discretionary distributions to herself, even though the will explicitly prohibits her from doing so.

In granting appellees' motion for judgment, the trial court expressed its general conclusion with respect to principal distributions, stating: "Based upon what I've indicated so far I do not find that any transfer of any stock or other assets to [Harriett] as a result of either invasions of principal which were reasonable, necessary or desirable, or an exercise of her [8.03 rights under John's will] were improper in any respect." With regard to the discretionary distributions of principal, we hold that the trial court made an error of law in reaching this conclusion. *See Bregel,* 253 Md. at 109, 251 A.2d 891; *Berlage,* 206 Md. at 532, 112 A.2d 461; *Caldwell,* 115 Md. at 128, 80 A. 839. We perceive that the court misapplied the burden of proof in this suit by a beneficiary against the trustees. The letter from appellee Davis suffices to meet appellant's burden to introduce evidence that appellees breached their fiduciary duty by improperly delegating their discretion to Harriett. *See id.* After introduction of this letter, the burden shifted to appellees to demonstrate that the statement in the letter did not accurately reflect how decisions regarding discretionary principal distributions were reached.

Appellant also complains that Harriett was allowed to choose which assets she would remove from the Family Trust, both pursuant to the discretionary distributions, and pursuant to her power to withdraw five percent of the trust annually. John's will provided that Harriett has the right to "withdraw from the principal ... amounts that do not exceed [five percent] of the value of the principal of the Family Trust." Her right to withdraw was expressed in terms of "amounts," and there was no intention expressed in the will that she would hold the power to withdraw specific assets. Applying the terms of the will, we conclude that it was the responsibility of appellees, not Harriett, to decide what assets would be distributed to Harriett under either type of principal distribution. Thus, a delegation of the responsibility from appellees to Harriett would constitute a breach of their fiduciary obligation.[11]

## D.

### Alternate Grounds Relied on by Trial Court: Exculpatory Clause

Appellant requested compensatory damages as part of the relief sought under Count I. The trial court found no liability on the part of appellees, concluding that there was no "evidence that there was a breach of fiduciary duty on the part of [appellees].... [T]he actions which were taken in this case were in accordance with the provisions of the Will and the trust agreement [and] ... Maryland law." The court went on to say that it " certainly [did] not find, based upon the language of the agreement itself that there was any evidence that even came close to any gross negligence, willful misconduct, fraud or any other improper actions." We perceive that the court, in making this latter finding was applying the

---

11. In a trust involving primarily publicly traded stocks, with readily ascertainable values, as the Marital Trust is, any damage to the remaindermen arising from such a breach appears quite speculative. In this regard, we note that a trustee "is not subject to a surcharge for a breach of trust that results in no loss." Scott, *supra*, § 205 at 239.

exculpatory language contained in section 10.06 of the will as an alternate ground for its holding. The will provides:

> All decisions made in good faith and with reasonable diligence by my Trustee shall be conclusive and binding on all persons having or acquiring any interest in any trust under this Will. No Trustee shall be responsible or liable for the manner in which any discretion is exercised pursuant hereto, or for the act or omission of any other Trustee, or, unless his or her conduct amounts to fraud, willful misconduct or gross negligence, for any act or omission of his or her own.

The exculpatory clause does not rule out liability for "willful misconduct" or "gross negligence." Thus, we examine the allegations of Count I to determine whether any of these actions could, if proven, constitute willful misconduct or gross negligence. Gross negligence is:

> 'An intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.'

*Marriott Corp. v. Chesapeake & Potomac Tel. Co.*, 124 Md. App. 463, 723 A.2d 454 (1998), *cert. denied*, 354 Md. 113, 729 A.2d 405 (1999) (quoting *Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12 (1968) (in turn, quoting 4 DeWitt C. Blashfield, *Cyclopedia of Automobile Law and Practice* § 2771 (1946 ed.))); *see also Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635, 495 A.2d 838 (1985).

■ Although appellees violated their fiduciary duty in refusing to give appellant an accounting during Harriett's lifetime, we do not consider this alone to be evidence of gross negligence or willful conduct. There was no evidence to suggest that appellees recognized an obligation to account,

during Harriett's lifetime or after her death, and intentionally disregarded it.

We cannot reach the same conclusion at this point with regard to the alleged improper delegation of discretionary power, or alleged improper failure to fund the Marital Trust. With respect to each of these items, the will provides explicit instructions. It expressly states that Harriett shall not make decisions regarding discretionary distributions of principal to her. Further, the formula for correctly funding the Marital and Family Trusts is clearly set forth in the will.

With clear instructions in the will, it would appear that appellees either did not read the will, or read the provisions in the will, but intentionally deviated from them. With respect to the latter, at least, a determination of gross negligence would be for the trier of fact. "Ordinarily, unless the facts are so clear as to permit a conclusion as a matter of law, it is for the trier of fact to determine whether a defendant's negligent conduct amounts to gross negligence." *Artis v. Cyphers,* 100 Md.App. 633, 652, 642 A.2d 298, *aff'd,* 336 Md. 561, 649 A.2d 838 (1994); *see also Romanesk,* 248 Md. at 423, 237 A.2d 12; *Feibelman v. Worthen Nat'l Bank, N.A.,* 20 F.3d 835, 837 (8th Cir.1994) (trustee acted with reckless disregard for rights of remaindermen with regard to distributions of principal to income beneficiary).[12]

Although the trial court decided as a matter of fact that there was no gross negligence that would render inapplicable the exculpatory clause, on remand this decision must be reconsidered in light of our discussion in Section I.[13]

---

**12.** In *Feibelman,* unlike the present case, the will required the trustee to determine that the income of the income beneficiary was insufficient to maintain her previous standard of living before principal distributions could be made. The case is instructive, nonetheless, regarding the type of conduct that could be considered to surpass the mere negligence standard. *See Feibelman,* 20 F.3d at 837.

**13.** The exculpatory language, moreover, applies only to the remedy of damages against appellees. As Professor Scott explained:

### Summary Regarding Count I

In sum, we conclude that appellant produced sufficient evidence to meet his initial burden to show a specific breach of duty by appellees regarding their failure to account, their failure to fund the Marital Trust, and improper delegation of their discretionary power to distribute principal and to select assets to satisfy Harriett's right of withdrawal. Therefore, the trial court erred in granting judgment against appellant at the end of his case. Rather, the trial court should have required appellees to present their case and rebut or explain the evidence presented by appellant. We remand for that purpose.

### II.

### The Trial Court's Order that Appellees' Attorneys' Fees Be Paid From the Family Trust

The trial court ordered that appellees' attorneys' fees relating to their defense of this litigation, totaling $141,866.66, be paid from the remaining principal of the Family Trust. Of this amount, $31,502.60 represented fees attributable to time spent by appellees in defense of this suit. Appellant challenges the validity of this award in light of the evidence that appellees violated their fiduciary obligations.

 The general rule is that a trustee is entitled to attorneys' fees paid from the trust if it successfully defends an action brought by the beneficiary. *See Sokol v. Nattans*, 26 Md.App. 65, 91–93, 337 A.2d 460, *cert. denied*, 275 Md. 755 (1975); *Saulsbury v. Denton Nat'l Bank*, 25 Md.App. 669, 672–73, 335 A.2d 199, *cert. denied*, 275 Md. 755 (1975). In this case, after determination of the issues on remand, the trial court may find that appellees' defense was successful in part,

---

Although an exculpatory clause may relieve the trustee from liability for damages, there may be other remedies available to the beneficiary, for example, removal of the trustee, enjoining the trustee from committing an improper act, or denial or reduction of the trustee's compensation.

Scott, *supra*, at § 542 at 216.

and unsuccessful in part. In such event, the court should allocate to the Trusts only that portion or percentage of the fees it considers, in its discretion, to be fairly attributable to the successful aspects of the defense.

## III.

### Other Counts

#### A.

#### Counts II and III

Counts II and III request declaratory and injunctive relief based on the alleged breaches of fiduciary duty discussed with respect to Count I. Appellant requested, in these counts, an accounting, and the establishment of a constructive trust with respect to the assets of the Family Trust that were improperly distributed to Harriett. Whether a constructive trust should be established will depend upon the outcome on remand of the issues discussed previously, and it would be premature for us to decide the issue now. Appellant also requests in Count III that the court remove appellees as trustees. As discussed earlier, it appears appellees failed to perform their fiduciary duty by refusing to account, and may have committed other violations. If, on remand, it is judicially determined that appellees have violated a fiduciary duty, then the court must consider whether removal is an appropriate remedy.[14] *See* E & T § 15–112(a)(2)(iii).

#### B.

#### Counts IV, V, VI, and VII

In Counts IV, V, VI, and VII appellant alleges that the same actions and omissions underlying appellees'

---

**14.** Regarding the issue of removal, the trial court should consider appellees' refusal to distribute the Family Trust assets to appellant in a timely manner after Harriett's death because appellant requested an accounting. This refusal may be a factor justifying removal or other relief, in light of our determination that appellant was correct in his request for an accounting, and the trial court's determination on remand regarding any other breach of fiduciary duty.

alleged breach of fiduciary duties also constituted a breach of contract (IV), a tortious breach of the covenants of good faith and fair dealing arising out of contract (V), negligence (VI), and trover and conversion (VII). Appellees argue that the decision of the Court of Appeals in *Kann v. Kann,* 344 Md. 689, 690 A.2d 509 (1997), makes clear that a beneficiary's claims against a trustee are exclusively equitable in nature, and therefore none of these causes of action are viable. We agree with appellees. *See id.* at 703, 690 A.2d 509. The equitable nature of a beneficiary's claims, however, does not preclude the beneficiary from recovering compensatory damages against a trustee under proper circumstances.[15] *See Cummins,* 322 Md. at 602, 588 A.2d 1205; *Caldwell,* 115 Md. at 124, 80 A. 839; *Zimmerman v. Frailey,* 70 Md. 561, 568, 17 A. 560 (1889); *see also* Scott, *supra,* § 172 at 452–54 and § 205 at 207–09; Bogert, *supra,* § 541 at 169. In this case, if any damages are awarded in the proceedings on remand, they could only be awarded under Count I. We affirm the trial court's decision to grant judgment in favor of appellees on Counts IV, V, VI, and VII.

## C.

### Count VIII—Accounting and Equitable Lien/Constructive or Resulting Trust

Count VIII requests an accounting and the establishment of an equitable lien or constructive trust "on the assets of defendants in such amount[s] as may be due and rightfully belonging to plaintiff." As we previously discussed, the trial court should have required a complete accounting by appellees. To the extent, however, that Count VIII requests that the court establish a lien or trust on the personal assets of

---

**15.** We do not read the Court of Appeals decision in *Kann* as intending to modify the rule regarding recovery of compensatory damages in an equitable proceeding against a trustee. *Kann* holds, *inter alia,* that because a claim by a beneficiary against a trustee must be brought in equity, the plaintiff has no right to a jury trial and cannot recover tort damages. *See Kann,* 344 Md. at 703, 690 A.2d 509.

appellees, rather than the assets included in Harriett's estate or the assets in the Family Trust, there is no allegation or evidence which supports such claim. Thus, other than the request for the accounting, the trial court was correct in entering judgment on Count VIII in favor of appellees.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID THREE–FOURTHS BY APPELLEES AND ONE–FOURTH BY APPELLANT.**