*609 OPINION OF THE COURT
David B. Saxe, J.
It seems that residents of New York City spend significant time and energy trying to acquire the right to purchase newly converted cooperative and condominium units at insider prices. Over the years, legal disputes have arisen regarding whether estates, relatives, and life partners of tenants of record have the legal right to purchase. This action presents another variation of such disputes.
This action is brought by plaintiff Lisa Ganson (Ganson) to determine her right to share in the purchase of a cooperative apartment. The following motions are consolidated for determination: (1) defendant Haralyn Goldfader’s (Goldfader) motion for summary judgment (No. 001); (2) the summary judgment motion of defendants Jump Associates and Douglas Elliman-Gibbons & Ives, Inc. (Douglas-Elliman) (No. 002); and (3) Ganson’s cross motion for summary judgment or, alternatively, for injunctive relief barring the sale of the apartment by Goldfader.
Ganson and Goldfader, as friends and roommates, shared a rent-stabilized apartment located at 235 East 57th Street from July 1982 until Ganson moved out in April 1986, leaving Goldfader in occupancy. Both women appeared as cotenants on the original lease, and through several renewals, until the lease was renewed in Goldfader’s name alone in June 1987.
In March 1985 the tenants of 235 East 57th Street received the "red herring” offering plan for the cooperative conversion of the building. Ganson and Goldfader signed a "no-buy pledge” in August 1985. The plan was accepted for filing in June 1986, and declared effective in September 1987. Goldfader purchased the shares in the apartment in November 1987 as the sole tenant of record.
Ganson contends that she had a right to join in the purchase of the co-op pursuant to an agreement between herself and Goldfader to share in the purchase of the apartment if the conversion came to pass. She believes that Goldfader defrauded her of her right to purchase by hiding from Ganson the fact of the conversion, and by having Ganson deleted as tenant of record when the rent-stabilized lease was renewed, thereby thwarting Ganson’s opportunity to be considered a tenant in occupancy entitled to purchase the apartment. Ganson brings this action for a declaration of rights, and other equitable and injunctive relief, including a claim for the *610 imposition of a constructive trust. She also sues the sponsor Jump Associates and the building’s general managing agent, Douglas-Elliman, for their alleged negligence in failing to notify Ganson of the lease renewal, and in allowing the new lease to be made out in the name of Goldfader to the exclusion of Ganson.
Only bona fide tenants in occupancy on the date the Attorney-General accepts the plan for filing are afforded the exclusive right to purchase their apartments upon the conversion of a residential apartment building to a cooperative status (General Business Law § 352-eeee [2] [d] [ix]). The " 'time of the offering’ ”, i.e., the date of acceptance by the Attorney-General, is thus considered the "critical date” to determine who has the right to purchase (McSpadden v Dawson, 117 AD2d 453, 457).
A great deal of the parties’ attention in these motions has been focused on events which happened long after the offering plan was accepted for filing. Consequently, the arguments concerning the effect of the lease renewal on Ganson’s right to purchase are, for the most part, irrelevant.
Goldfader has claimed, without contradiction, that the plan was accepted for filing in June 1986. Therefore, Ganson’s right to join in the purchase, if any, must be measured as of that time, and not later.
It has been said that the term " 'tenant in occupancy’ ” implies actual use and possession by the would-be purchaser at the time of the offering (De Kovessey v Coronet Props. Co., 69 NY2d 448, 457). However, in Manolovici v 136 E. 64th St. Assocs. (70 NY2d 785), the Court of Appeals clarified the definition of a " 'tenant in occupancy’ ” to include a tenant of record of a rent-stabilized apartment who, although he lived elsewhere at the time of the offering, nevertheless maintained a "sufficient nexus with the apartment as of the critical date to qualify as a tenant in occupancy entitled to participate on an equal basis” in the purchase of the apartment with the actual occupant of the apartment (supra, at 787). In fact, courts have agreed that the matter should not be dependent on whose name appears on the lease, but "should turn on a practical analysis of the relationship of the competing parties” (McSpadden v Dawson, supra, at 457). Since Ganson was still listed as a tenant of record of the apartment in June 1986, it is necessary to review her connections with the apartment as of that time to determine whether she had any right to join in the purchase of the apartment.
*611 By June 1986, it is agreed, Ganson had moved out of the apartment, and had not resided there for about two months. During this time she continued to pay 25%, rather than 50%, of the rent, making her payments, as always, directly to the landlord. In July 1986, Ganson found a roommate for Goldfader, one Susan Leonard, who therefore occupied the apartment pursuant to a written agreement with Ganson. The agreement recognized that no formal sublet had been authorized by the landlord, so that Leonard occupied the premises on a temporary basis, as a "roommate”. Leonard acknowledged in the agreement that she had no right to purchase the apartment if the building converted to cooperative ownership. Payment of the one half of the rent was thereafter made by Leonard to Ganson, who then paid the landlord, until April 1987, when Leonard commenced payment of a newly negotiated share of the rent directly to Goldfader. Ganson’s name was taken off of the utility accounts, and she informed the landlord and management that Leonard would "also” be residing in the apartment as "an additional person” on a temporary basis.
In order to solidify her continuing legal relationship with the apartment, Ganson insists that the agreement with Leonard amounted to a sublet of the apartment. A sublessor of a rent-stabilized apartment may retain his or her rights to purchase into the cooperative if the sublease provides for a reservation of an interest in some portion of the remaining term (McSpadden v Dawson, supra). Also, under the terms of the offering plan a bona fide tenant of record "shall be presumed to be a bona fide tenant-in-occupancy even though the tenant has sublet his or her dwelling unit or the dwelling unit is not the tenant’s primary residence.”
The agreement between Ganson and Leonard made in contravention of the procedure outlined in Real Property Law § 226-b (2) (b) is not a valid sublease. The communications between Ganson and the landlord and managing agent reveal no formal request to sublet, as is required, and, in fact, suggest that Leonard was to be accepted as a third occupant of the premises, rather than replacement for Ganson. This fact, however, does not necessarily injure Ganson’s case.
The focus of this court’s inquiry is on whether Ganson retained a sufficient connection to the apartment including the legal right to occupy, so as to qualify as a tenant in occupancy (Manolovici v 136 E. 64th St. Assocs., supra, at 787).
*612 In Manolovici (supra) it was decided that a husband living apart from his wife and children nevertheless retained the legal right to occupy the apartment in which his family still resided, and maintained his landlord-tenant relationship sufficient to make him a tenant in occupancy on the critical date. The court was also impressed by the fact that both cotenants were using the apartment "for the purpose of raising and sheltering their family” (70 NY2d 785, 788, supra). On the other hand, a wife who "relinquished] her rights to the apartment” by the removal of her person and property, "and by failing to pay the rent or to make sure that rent was being paid”, could not qualify as a tenant in occupancy (Rakowski v Rakowski, 109 AD2d 1, 7).
Under these standards, it appears that Ganson was a tenant in occupancy during June 1986 entitled to share in the purchase of the shares in the apartment. On the date in question, she had removed herself and her possessions, except for a few items she had never returned for. Whether she ever intended to return, as she now claims, is a question of fact, but the evidence shows that she fully intended to, and did, retain a legal interest in the apartment, by continuing to pay rent, and by seeking a roommate to replace herself in occupancy. She sought to maintain the landlord-tenant relationship by requiring that the rent be paid directly to her by Leonard, so she, in turn, could pay the landlord personally. This relationship continued until April 1987 when from the evidence it appears that the landlord and Ganson dispensed with the written agreement and a new agreement between Leonard and Goldfader was negotiated.
Although the holding in Manolovici (supra) has been recognized as arising from an "exceptional set of circumstances” (see, Matter of Rubinstein v 160 W. End Owners Corp., 74 NY2d 443, 447), there is nothing to indicate that its applicability is limited to separated husbands and wives raising families in the disputed apartment. Therefore, the precedent of Manolovici requires that Ganson be permitted to share jointly in the purchase of the defendant’s apartment.
The claims of deceit and negligence arising from the renewal of the lease in 1987 have no bearing on the question of Ganson’s right to purchase. No injury has been shown which was caused by the renewal in Goldfader’s name, since it is Ganson’s status as a tenant in 1986, and not 1987, which is controlling.
*613 The court notes that no negligence can be attributed to the landlord or managing agent for their alleged failure to notify Ganson of the lease renewal. As was discussed previously, the facts indicate that Ganson finally abandoned her contact and relationship to the apartment when she agreed to dispense with the terms of the roommate agreement negotiated with Leonard, and stopped taking any responsibility for the payment of her share of the rent. Her right to share in the renewal lease at all is highly questionable after this time.
Further, the landlord had no duty to personally notify Ganson of the upcoming renewal beyond the notice called for in section 2523.5 (a) of the Rent Stabilization Code (9 NYCRR). This section calls for a landlord to notify the tenant of record by mail or personal delivery within a prescribed period of time. This was accomplished by mailing the lease renewal to the rent-stabilized apartment in one envelope in the names of both tenants, as they appeared on the lease (see, Rose Assocs. v Bernstein, 138 Misc 2d 1044). Certified mail delivery was not statutorily required (supra, at 1047). Nor was the landlord required to search for the plaintiff to give her further notice, since she had not provided the landlord with a viable address or telephone number where she could have been reached. Therefore, Ganson’s claims against Jump Associates and Douglas-Elliman would be dismissed in any event, and their motion for summary judgment is granted.
The court is now faced with devising a remedy for Ganson, who was legally entitled to share in the purchase of the apartment on a "coequal joint basis” with her cotenant Goldfader (see, Manolovici v 136 E. 64th St. Assocs., 70 NY2d 785, 788, supra). This would be relatively simple if, as appears to be the case in Manolovici and in other similar cases, the declaration of the parties’ rights could be made prior to the purchase. The situation in the present case is markedly different. Goldfader purchased the apartment, with the aid of financing, almost three years ago. Since that time she has paid 100% of the costs of the apartment, including maintenance, taxes and improvements to the premises.
Plaintiff, on the other hand, has not contributed any funds to the purchase or maintenance of the apartment. Yet in her complaint the only relief she requests, with regard to her rights in the apartment, is for the imposition of a constructive trust upon the cooperative shares, followed by a sale of the shares "thereafter dividing the monies derived from said sale *614 pursuant to the respective rights and interests of the parties”, all without any contribution on plaintiffs part.
A grant of such relief would be inequitable. Plaintiffs right is to share in the purchase of the apartment, as a cosubscriber, and then to share in its maintenance as co-owner. She has no right simply to request a division of the shares. Having been deprived of the opportunity to share in the purchase, she must now he afforded the opportunity to do so, if she is able. Goldfader, on the other hand, must be recompensed as to the considerable expense she has incurred in financing and maintaining the apartment. To permit plaintiff a coequal right to own the apartment, without shouldering her share of its burdens, would not be correct. A hearing must be held to determine the amount which plaintiff must assume in the purchase and maintenance of the apartment before any sale of the shares can be permitted. Only if plaintiff chooses to proceed with the purchase at the price established will she gain the right, as a co-owner, to call for the sale of the premises.
Accordingly, the motions and cross motions are determined as follows:
(1) The motion of defendant Goldfader designated No. 001 is denied;
(2) The motion of defendants Jump and Douglas-Elliman for summary judgment, designated No. 002, is granted, and the plaintiffs fifth and sixth causes of action are dismissed; and
(3) The cross motion of plaintiff for summary judgment is granted in part as follows:
(a) summary judgment is granted on the first cause of action, and plaintiff is declared entitled to purchase the subject apartment on a coequal joint basis with defendant Goldfader, with the proper amount to be paid referred for assignment to a Special Referee to hear and report (with recommendations);
(b) summary judgment is denied on the second, third and seventh causes of action.
Defendant Goldfader is restrained and enjoined from selling or transferring the shares in the apartment until such time as it is established whether or not plaintiff will choose to exercise *615 her right to purchase the shares in accordance with the price and costs established at a hearing as above described.
Counsel are directed to file a copy of the settled order with notice of entry within five days of publication with the Legal Support Office, room 311, in order to obtain a calendar date.