967 A.2d 274

Catherine A. Moreland JOHNSON

v.

James Michael JOHNSON.

No. 126, Sept. Term, 2008.

Court of Special Appeals of Maryland.

March 10, 2009.

644

**645**

F. Robert Troll, Jr. (Susan Zuhowski, O'Malley, Miles, Nylen & Gilmore, PA, on brief), Calverton, for Appellant.

Frederick R. Franke, Jr., Annapolis, for Appellee.

Panel: WRIGHT, GRAEFF and MATRICCIANI, JJ.

MATRICCIANI, J.

This case arises from a dispute between a trust beneficiary and its trustee. Appellant, Catherine A. Moreland Johnson (Catherine), is trustee and stepmother to appellee and trust beneficiary, James Michael Johnson (James). Unsuccessful in his efforts to obtain an accounting of the trust from Catherine, James filed a Petition for Court Assumption of Jurisdiction of Trust Estate and Related Relief in the Circuit Court for Calvert County. Catherine opposed the petition, asserting that James lacked a cognizable interest in the trust. After a hearing on the matter, the circuit court ordered Catherine to provide an accounting of the trust at issue, the Johnson Family Trust (the "Trust"), to James by April 25, 2008. In response, Catherine noted this timely appeal.

## QUESTIONS PRESENTED

Appellant presented one question for our review, which we have reworded and divided into two questions.

I. Did the trial court err in finding that James had an interest in the Johnson Family Trust and that as a result of that interest he was entitled to an accounting?

II. Did the trial court err in finding that the language in the Trust purporting to eliminate the Trustee's duty to provide an accounting was ineffective and that James was still entitled to an accounting of the trust?

Finding no error, we shall affirm the trial court's judgment.

## FACTS AND PROCEEDINGS

Catherine and the late Edward R. Johnson (the "Johnsons") were married on January 9, 1988. On August 25, 2004, the Johnsons established an inter vivos trust known as the Johnson Family Trust. The Trust made the Johnsons Trustors and the first Co–Trustees. Edward died on February 14, 2006. Following Edward's death, his son, James, twice requested an accounting of the Trust. When the requests went unanswered, he filed a Petition for Court Assumption of Jurisdiction of a Trust and Related Relief on October 11, 2007. He asked the court to order his stepmother, Catherine, to file a complete and accurate accounting of her tenure as Trustee. Catherine replied on January 14, 2008, asking the court to deny the requested accounting. The circuit court held a hearing on the matter on January 31, 2008, and it filed an opinion and order on February 12, 2008. The court ordered Catherine to provide an accounting of the Trust to James by April 25, 2008. Catherine noted this timely appeal on March 5, 2008. Relevant excerpts of the Trust and additional facts will be provided throughout the discussion.

## DISCUSSION

### I.

### *Standard of Review*

For cases tried without a jury, this Court must review the case on both the law and the evidence. Maryland

Rule 8–131(c). We will not set aside the judgment of the circuit court on the evidence unless clearly erroneous, and we give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Elderkin v. Carroll,* 403 Md. 343, 353, 941 A.2d 1127 (2008). "When the ruling of a trial court requires the interpretation and application of Maryland case law, we give no deference to its conclusions of law." *Id.* We review the court's conclusions of law *de novo. Sifrit v. State,* 383 Md. 77, 93, 857 A.2d 65 (2004).

## II.

### *The Trust*

The Johnson Family Trust was created on August 25, 2004, by Edward R. Johnson and Catherine A. Moreland Johnson, his wife. They were named as "Trustors" and "Co–Trustees" and they established the Trust, according to its express language, with the intent that, while they were both living, they would each equitably own an undivided one-half interest in all property subject to the Trust. This was to be accomplished by the use of the federal gift tax exemption for transfers between husband and wife. Trust property, which was listed in an attached "Schedule A," constituted the "Trust Estate" [1] and, due to its gifting provisions, the beneficial interest of the first Trustor to die was to be exactly equal to that of the surviving Trustor. Trust, Article I.

On February 14, 2006, Edward was the first to die. Pursuant to the Trust instrument, the Trust Estate was then to be divided into two shares. Trust A was to be created to take advantage of the federal estate tax exclusion and other tax provisions. The remaining portion of the decedent's interest was to be distributed to an irrevocable Trust B.[2] Trust, Article IV.

---

1. The "Trust Estate" consisted of two residential properties in Sunderland, Maryland and five condominium units in Lothian, Maryland. No values for these properties are apparent from the record.

2. The record reflects that Trust B had not been funded at the time this case was before the circuit court.

The surviving Trustor (Catherine) is entitled to the income and potentially all of the principal of Trust A during her lifetime, if needed for her health, maintenance, reasonable comfort and support. She has a power of appointment to dispose of the undistributed income and principal of Trust A by her Last Will and Testament. If the power is not exercised, upon her death, the Trust A corpus is to be added to Trust B and distributed according to its terms.

Catherine has the same lifetime entitlement to the income and to principal of Trust B if needed for her health, maintenance, or support. She has a limited power of appointment over the Trust B estate which authorizes her to leave it to one or more of any children [3] and/or other descendants of both Trustors in such shares as she may deem appropriate. Trust, Article IV. If Catherine does not exercise this limited power, distribution of the Trust B corpus is governed by the Trust's Article VI, which expressly names Edward's son, James, as a beneficiary, if he survives Catherine.

## III.

### *James's Interest in the Trust*

We begin the inquiry concerning James's entitlement to an accounting by identifying his interest in the Trust.

A leading treatise on the subject categorizes a beneficiary's interests as follows:

> The settlor has great freedom in the selection of the beneficiaries and their interests. The interests he creates in them must always be equitable, but otherwise they need possess no particular characteristics. Such a beneficial interest may be a present interest, entitling its holder to immediate enjoyment of income of the trust property. Or it

---

**3.** The Trust identifies two living children of Edward R. Johnson. They are Ronald Edward Johnson, who is expressly excluded from inheriting from the Trust, and James Michael Johnson, appellee. It also references Lily Ann Michelle Moreland, Catherine's niece, indicating that the Trustors had custody of her. No other children are mentioned in the Trust instrument or identified in the record.

may be a future interest, giving the beneficiary rights to receive trust assets or benefits at a later time. The interest of the beneficiary may be absolute and vested, so that the happening of no future event will destroy or diminish it, or it may be subject to a condition precedent or contingent, as where the beneficiary's survivorship of a named date is a condition to his enjoyment of benefits from the trust. Likewise the beneficiary's interest may be made determinable or with a condition subsequent attached, so that on the happening of a future event the interest will diminish or cease entirely.

George T. Bogert, The Law of Trusts and Trustees § 181 at 244–46 (Rev.2d ed.1979) (internal footnotes omitted).

 Under the terms of the Trust, only Catherine held a present interest, entitling her to the Trust income at least quarter-annually. Trust, Article IV. Thus, James's interest, which depends upon his surviving his stepmother, is at best a future interest, contingent upon his survivorship. It is a property interest properly deemed a "remainder interest." As such, it has been defined as "any future interest limited in favor of a transferee in such manner that it can become a present interest upon the expiration of all prior interests simultaneously created, and cannot divest any interest except an interest left in the transferor." *Standard Fire Ins. Co. v. Berrett,* 395 Md. 439, 452, 910 A.2d 1072 (2006) (citing Restatement (Second) of Property § 156, at 535 (1936)).

 Moreover, the law has an express preference for treating a remainder as "vested" rather than "contingent," so that a vested remainder is a present fixed right to future enjoyment, even if it is subject to a condition subsequent which would result in its becoming divested. Maryland Law Encyclopedia, Estates, § 24 at 26–27 (1999). Because James's remainder interest in the Trust estate here can be defeated if he fails to survive Catherine, or if her right to invade the Trust principal for her health, maintenance or support exhausts the corpus of the Trust, his is a vested defeasible remainder interest in the Trust. Indeed, his interests in

Trust A and Trust B differ as well, because Catherine may exercise her power of appointment to exclude James from any of the proceeds of Trust A, making his interest in the revocable Trust A merely contingent, while his interest in the irrevocable Trust B is vested, but subject to divestment.

> The specific pertinent Trust provisions are set forth below: Upon the death of the first TRUSTOR to die, the TRUSTEE shall distribute to Trust A (referred to below) the deceased TRUSTOR'S interest in his or her personal and household effects and tangible personal property of every kind.... The TRUSTEE shall divide the remaining principal and any undistributed net income of such deceased TRUSTOR'S one-half interest in the Trust Estate other than the above-described effects and personal property ... into two shares....

Trust, Article IV(B).

The Trust provided that the shares were to be distributed into Trust A and Trust B, based on the Federal Estate Tax Unified Credit and the estate tax credit or exemption. Once the shares were distributed into Trusts A and B, the Trust set forth how the Trustee was to hold, manage, and distribute the Trust.

> The Trustee was to distribute Trust A as follows:
> During the lifetime of the surviving TRUSTOR, the TRUSTEE shall pay to the surviving TRUSTOR, not less frequently than quarter-annually, all the net income (if any) of the Trust Estate together with any amounts of principal that the surviving TRUSTOR might request or that may be necessary to maintain the surviving TRUSTOR and provide for the surviving TRUSTOR'S health, maintenance, reasonable comfort and support.

Trust, Article IV(C)(1). Upon the death of the surviving trustor, the trustee was to:

> [D]istribute the principal and undistributed net income of Trust A to or in trust for such persons or entities, or the estate of the surviving TRUSTOR, in such amounts or proportions as the surviving TRUSTOR shall designate by

specific reference to this power in the surviving TRUS-
TOR'S Last Will and Testament.

Trust, Article IV(C)(2)(a). The Trust then provided that if the surviving trustor did not effectively or fully exercise the right to designate beneficiaries in his or her last will and testament, the undistributed amount shall be added to and disposed of as part of Trust B under the terms that apply to it.

The Trustee was to hold, manage and distribute Trust B as follows:

During the lifetime of the surviving TRUSTOR, the TRUS-
TEE shall pay to the surviving TRUSTOR, not less fre-
quently than quarter-annually, all of the net income of Trust B. In addition, the TRUSTEE may pay to or for the benefit of the surviving TRUSTOR, for his or her health, mainte-
nance, or support, any part or all of the principal of Trust B, without considering other resources available to the surviv-
ing TRUSTOR.

Trust, Article IV(D)(1).

Upon the death of the surviving TRUSTOR, the TRUSTEE shall distribute the principal and any undistributed income of Trust B (including any assets received from Trust A or other sources) as the surviving TRUSTOR may appoint by specific reference to this limited power in his or her Last Will and Testament. The surviving TRUSTOR may ap-
point to or among any one or more of any children and/or other descendants of both TRUSTORS in such shares as he or she may deem appropriate, and he or she may appoint outright, to a custodian, or to a TRUSTEE to be held in further lawful trust.

Trust, Article IV(D)(2).

In the event and to the extent the surviving TRUSTOR shall fail to exercise the foregoing limited power of appoint-
ment, the remaining principal and undistributed income of Trust B shall be held, managed and distributed as provided in Article VI below.

Trust, Article IV(D)(3).

Article VI sets forth the provisions for distribution of the Trust after the death of the surviving Trustor. The relevant

provision in this section states: "The TRUSTEE shall distribute free of Trust the remaining one-half (½) of the Trust Estate to **James Michael Johnson,** if he is then living." Trust, Article IV(B)(3). Contrary to appellant's contention, and as we stated *supra*, appellee possesses a contingent interest in Trust A, as well as a vested remainder interest subject to divestment in Trust B. Thus, James possesses a legally cognizable interest in the Trust.

## IV.

### *The Right to an Accounting*

■ Having determined that James possesses a future interest in the Trust, we must consider the trial court's decision that his interest gives rise to a right to an accounting.

■ According to the Restatement of Trusts [4] a trust is defined as a "fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons[.]" 1 Restatement (Third) of Trusts § 2 at 17 (2003) ("Restatement"). Thus, a fiduciary relationship exists between the trustee and the beneficiary. Beneficiaries are the people, "upon whom the settlor manifested an intention to confer beneficial interests (vested or contingent) under the trust[.]" 2 Restatement, § 48 cmt. a at 236. Beneficiaries can hold a variety of interests:

The interests of a beneficiary may be a present or future interest; and an interest may or may not be subject to conditions with respect to the recipients or the extent of the interest. Furthermore, an interest may be subject to the discretionary decisions of a trustee or another, or subject to a power of appointment or a power of revocation or amend-

---

4. We can find no case law indicating that Maryland has expressly adopted the Restatement of Trusts, but we recognize it as a leading authority with respect to the issue before us.

ment. In fact, there is practically no limit to the variety of interests a settlor may create.

2 Restatement, § 49 cmt. b at 243–44 (internal references omitted).

Because James has a future interest in the Trust, despite the uncertainty of his actually benefitting from that future interest, we hold that he is entitled to an accounting from the Trustee. Maryland Code (1974, 2001 Repl.Vol.), § 14–405(j)(1) of the Estates and Trust Article ("ET") lists several categories of people who are permitted to request an accounting of trust property and transactions. The relevant parties included in the list are "The beneficiary or the beneficiary's legal representative." ET § 14–405(j)(1)(ii). In response, "(2)The trustee shall provide a written accounting of all trust property and trust transactions for the previous year, or for a longer period if needed for tax purposes, upon request by and at reasonable times to a person authorized in paragraph (1) of this subsection." ET § 14–405(j)(2). In *In re Clarke's Will,* 198 Md. 266, 81 A.2d 640 (1951), the Court of Appeals expounded on who was permitted to request an accounting. The Court stated that, "[i]f the petitioner has any interest at all he is entitled to invoke the court's protection." *Id.* at 273, 81 A.2d 640 (citations omitted). The Court continued by explaining that "[t]he mere fact that future interests are involved will not defeat the power to declare rights . . . ." *Id.*

When last confronted with this issue, we relied on *In re Clarke's Will,* 198 Md. 266, 81 A.2d 640, Austin W. Scott and William Fratcher's The Law of Trusts, and George Bogert's Treatise on the Law of Trusts and Trustees and we held that "[t]he fact that a beneficiary has only a future interest . . . does not preclude him from compelling the trustee to account." *Jacob v. Davis,* 128 Md.App. 433, 448, 738 A.2d 904 (1999).[5]

---

**5.** At argument, appellant's counsel attempted to distinguish our decision in *Jacob v. Davis,* 128 Md.App. 433, 738 A.2d 904, by contrasting its context of testamentary trusts to the present case, where the Johnsons established an inter vivos trust, one which he characterized as a

Other jurisdictions, however, have limited the requests for accounting from beneficiaries with conditional or contingent interests to instances where "waste, mismanagement or dissipation of assets appear or can be shown." *Barnhart v. Barnhart*, 415 Ill. 303, 114 N.E.2d 378, 388 (1953). A number of those decisions are cited in the case of *Kenny v. Citizens Nat. Trust & Sav. Bank of Los Angeles*, 269 P.2d 641 (Cal. App.1954), which stated: "So substantial is the equitable interest of the contingent remainderman of a trust, that many jurisdictions allow the maintenance of various types of actions and proceedings by a contingent beneficiary against a trustee, for good cause shown, in order to have his possible eventual interest properly secured and protected." *Id.* at 649. At least one federal court in Maryland has acknowledged the entitlement of a beneficiary with a future interest alone to request an accounting to prevent dissipation of assets, but only in exceptional circumstances. *Davidson v. Blaustein*, 247 F.Supp. 225, 227 (D.Md.1965)(citing *In re Clarke's Will*, supra).[6] Our view of the Maryland authorities does not disclose such a burden on the beneficiary to make such a showing. Thus, James is entitled to make a reasonable request for an accounting[7] based upon his status as a Trust beneficiary who possesses a future interest in the Trust estate.

private trust pursuant to which Catherine managed her own monies. Thus, he contended that *Jacob* should not control here and the trustee should not have to account for transactions involving merely her own funds. For the reasons stated herein, we disagree.

**6.** In *Jacob v. Davis, supra,* we expressed our view that the *Davidson* decision "represents an unduly restrictive view of a beneficiary's right to an accounting." 128 Md.App. at 449 n. 6, 738 A.2d 904.

**7.** ET § 14–405(j)(2) imposes time constraints and requires that requests for accountings be made by and at reasonable times. Maryland case law also suggests that the requests must be reasonable. In *Jacob v. Davis,* this Court explained that the beneficiary is entitled to an accounting if the requests are made at "a reasonable time and place." *Jacob,* 128 Md.App. at 448, 738 A.2d 904. Additionally, the Court of Appeals has noted that while in the ordinary case, beneficiaries are entitled to an accounting, the right is not absolute. *Shipley v. Crouse,* 279 Md. 613, 625, 370 A.2d 97 (1977).

Appellant also argues that the Trust instrument grants her, as surviving trustor, discretion to distribute the remainder of the Trust at her death. But, as we have held, *supra*, this contingency is insufficient to deny James's interest or to avoid her obligation to provide him an accounting.

Alternatively, Catherine contends that if James is entitled to an accounting, it should be limited to Trust B. We disagree and conclude that James can request an accounting of the entire Trust. While his interest in Trust B is more defined, he has an interest in Trust A and how Catherine manages it. While Catherine is living, she has access to both trusts and the management of Trust A potentially affects the proceeds available for Trust B. In short, the trusts are inextricably linked and limiting James's right to an accounting of Trust B will not satisfy the Trustee's legal responsibility to him.

## V.

### *The Limitations in the Trust*

Catherine contends that the circuit court's order to provide an accounting contravenes the explicit terms of the Trust, making it contrary to Maryland case law that states that the settlor's intent is controlling. James asserts that Maryland law requires a trustee to provide an accounting upon a beneficiary's request.

Catherine argues that three express provisions of the Trust show the settlor's specific intent that no trustee have an obligation to provide an accounting: first, the section that states: "The TRUSTEE shall not be required at any time to file any account in any court, nor shall the TRUSTEE be required to have any account judicially settled." Trust, Article X(C); second, the language that states the Trustors' express intent to create a private trust; and, third, the Trust language that states: "TRUSTORS direct that only the information concerning the benefits held for or distributable to any particular beneficiary be revealed to such beneficiary and that no person shall be entitled to information concerning benefits held for or distributable to any other person." Trust, Article

XVI(P). These three provisions, Catherine contends, override James's legal right to request an accounting. She argues that Trustors have the ability to modify their legal obligation to provide an accounting by explicitly eliminating it in the Trust's provisions.

This Court encountered a similar issue in *Jacob v. Davis*, 128 Md.App. at 450–51, 738 A.2d 904. In that case, appellees argued that a section of the contested will relieved the trustee of accounting to the beneficiaries. *Id.* at 446, 738 A.2d 904. The provision in *Jacob* read:

> My Trustee shall be excused from filing any account with any court; however, my Trustee shall render an annual (or more frequent) account and may, at any other time, including at the time of the death, resignation, or removal of any Trustee, render an intermediate account of my Trustee's administration to such of the then current income beneficiaries who are of sound mind and not minors at the time of such accounting.

*Id.* We stated that, "[t]o our knowledge, no Maryland appellate decision ha[d] addressed the extent to which a decedent or testator [could] limit the common law duty of a trustee to account in a court of equity." *Id.* at 450, 738 A.2d 904.[8] We further stated that there were not statutes or rules addressing this issue. *Id.* at 450, 738 A.2d 904. Thus, we turned to a recognized authority on Trusts, Bogert's, *The Law of Trusts and Trustees*. The *Jacob* Court quoted, but did not expressly adopt, Bogert's explanation of the role of a trustee and the reasons why a Trustor should not be permitted to avoid his

---

**8.** Our research uncovered no additional authority in Maryland or elsewhere since we last addressed this issue in *Jacob* in 1999. However, *cf. Stix v. Comm'r*, 152 F.2d 562 (2d Cir.1945) (stating, "No language, however strong, will entirely remove any power held in trust from the reach of a court of equity."); *In re Clark*, 174 Iowa 449, 154 N.W. 759 (1915) (stating, "It cannot be that the creator of a trust by will can absolutely exclude the courts from controlling any and all expenditures from the trust fund[.]"); *Carrier v. Carrier*, 226 N.Y. 114, 123 N.E. 135 (1919) (stating, "His discretion, however broad, did not relieve him from obedience to the great principles of equity which are the life of every trust.").

duty to account. *Id.* at 450–51, 738 A.2d 904. Bogert's statement reads as follows:

A [testator] who attempts to create a trust without any accountability in the trustee is contradicting himself. A trust necessarily grants rights to the beneficiary that are enforceable in equity. If the trustee cannot be called to account, the beneficiary cannot force the trustee to any particular line of conduct with regard to the trust property or sue for breach of trust. The trustee may do as he likes with the property, and the beneficiary is without remedy. If the court finds that the settlor really intended a trust, it would seem that accountability in chancery or other court must inevitably follow as an incident. Without an account the beneficiary must be in the dark as to whether there has been a breach of trust and so is prevented as a practical matter from holding the trustee liable for a breach.

*The Law of Trusts and Trustees,* § 973 at 467.

■ The Restatement of Trusts also outlines the fiduciary duties of a trustee, explaining:

[F]iduciary principles include (i) the general duty to act, reasonably informed, with impartiality among the various beneficiaries and interests and (ii) the duty to provide the beneficiaries with information concerning the trust and its administration. This combination of duties entitles the beneficiaries (and also the court) not only to accounting information but also to relevant, general information concerning the bases upon which the trustee's discretionary judgments have been or will be made.

Restatement, § 50 cmt. b at 260 (2003) (internal references omitted). It continues: "It is contrary to sound policy, and a contradiction in terms, to permit the settlor to relieve a 'trustee' of all accountability." *Id.* at cmt. c at 262. We now adopt this reasoning and conclude that a trustor cannot, by including limitations in the Trust instrument, circumscribe the trustee's duty to account to beneficiaries.

This conclusion is in line with recognized Maryland law regarding trusts and accountings. In *In re Clarke's Will,* 198

Md. 266, 81 A.2d 640, the Court of Appeals liberally interpreted the class of beneficiaries who would be permitted to request an accounting.  By broadly construing who was entitled to an accounting, the Court of Appeals recognized the importance of accountings for maintaining the integrity of trusts.  *See also Ehlen v. Ehlen,* 63 Md. 267 (1885) (responding to interested party's petition, court affirmed the order for trustee to bring into court the securities and money held in trust after it was shown that property was in danger).

Permitting a trustor to eliminate the duty to account to beneficiaries would be contrary to the Court of Appeals' decisions regarding who is entitled to an accounting.  We conclude that, despite the language in the Trust attempting to eliminate Catherine's duty to account, James is entitled to request an accounting and Catherine is required to provide it.

**JUDGMENT AFFIRMED.  COSTS TO BE PAID BY APPELLANT.**